21-3146 National Nurses Organizing v. Midwest Division National Nurses United, who I will be referring often to as just the union, and I'll refer to EPELI as either the employer or the hospital. The union represents a bargaining unit of registered nurses at the employer's Overland Park, Kansas hospital, who I may simply refer to as the RNs. This case, your honors know, concerns the employer's refusal to arbitrate a grievance alleging displacement of bargaining unit work that the union filed under the party's collective bargaining agreement. By denying the union's motion for summary judgment and granting the employer's cross-motion for summary judgment, the district court incorrectly applied well-settled Supreme Court and Tenth Circuit precedent, holding that under federal labor law, there is a strong presumption in favor of arbitration of labor disputes. This goes back to the Steelworkers Trilogy from the Supreme Court, and the presumption of arbitrability requires that a grievance just need to be susceptible to an interpretation that it is arbitrable, especially when there is a broad arbitration provision like Article III of the CBA. In order to arbitrate should issue, unless it can be said with positive assurance that the grievance is not arbitrable. Doubts are to be resolved in favor of arbitrability. The district court in the decision below even recognized that the grievance alleged something that was arbitrable, but yet did not apply the strong presumption of arbitrability. But why was it wrong for the district court to understand a dispute about bargaining unit work to really be a dispute about a staffing plan? I mean, you're disputing something that would fall within the scope of staffing. Yes, Your Honor, that's a good question, but it really gets to the heart of the matter here because the staffing plan goes to patient acuity. Is staffing plan defined in the CBA? The staffing plan is at Article 34, and it is a detailed plan, but it is not defined in the CBA. It is a provision that, as I mentioned, goes to nurse to patient ratios in the interest of patient care, and it goes to levels of staffing, not to who is performing the bargaining unit work, and that is at Article 34. And continuing, if that answers your question, Your Honor, if the district court recognizes a grievance contains something that is arbitrable, but does not order arbitration, error is facially clear because doubts are to be resolved in favor of arbitrability, but instead the court overreached as cautioned against by the Supreme Court in Steelworkers v. American Manufacturing and entangled itself in the merits of the dispute. Effectively ruling the employer can assign bargaining unit work to supervisors. How do you deal with 34F, which says that staffing plans and the methods to monitor compliance with the plans is not subject to arbitration but is subject to mediation? Okay. Thank you, Your Honor. Okay. So Article 34 is identical. I should mention, as I have called attention to this court, there is a related court case in the Eighth Circuit that was just affirmed where the court constructed Is the CBA in that case identical to the CBA here? The language you're referring to in Article No. Is the entire CBA the same? Almost verbatim. There are a few differences. There are a few differences. Are they meaningful differences? The district court thought they were meaningful differences when she was looking at the district court decision before the Eighth Circuit had ruled. I believe they were not meaningful differences, and I will expand on that. But I would first like to address Judge Timkovich. Could you repeat your question? I just wondered why the 34F did not resolve this case. Okay. Because I'm just going to quote the Eighth Circuit because it's the exact, this is a verbatim provision. It just has a different article number. Read as a whole, quote, read as a whole, Article 38 addresses nurse to patient staffing levels and establishes the means to monitor and resolve disputes regarding those staffing levels. It does not address the subject matter of this dispute, i.e., which nurses perform the work or the displacement of bargaining unit nurses. Your Honors, and Judge Timkovich, the same is true here. Article 34 covers nurse to patient staffing levels. It's verbatim the same as the other case, and in no manner addresses the subject of the grievance, bargaining unit work preservation. So sticking on Article 34, since we're on that, I would say that the reason it clearly doesn't resolve it to underscore the lack of logic in the hospital's argument is it provides the disagreements regarding issues covered by this article, which again go to not who's performing the work or displacement of bargaining unit work, but nurse to patient staffing levels. So any disagreement under Article 34 would concern that. And when you have that followed by including disagreements related to staffing plans, that is a subset of disagreements under Article 34. So that requires us to understand staffing levels to just be ratios. It's numbers. It's not who substantively is performing the work. That is exactly right, Your Honor. And that is why the staffing committee provision, Article 34, does allow for only mediation and not arbitration. And we utilize that provision. When we disagree, when in the interest of patient care, our nurses feel that we want to meet on this, the staffing committee doesn't think that adequate levels, acuity levels are reflected at staffing levels, that is mediated and not arbitrated. But when a staffing plan is enacted that permanently assigns work to supervisors and supervisory nurses instead of bargaining unit nurses, that's another animal. And that has not happened until these two cases. And that is why we're here and that's why we filed these grievances and why we believe they are arbitrable and why we believe that the district court got this incorrect. Let's turn to the management rights provision, Article 19. And in that, just before we get to Section 2, it states, it is understood that nothing in this agreement shall preclude persons employed in a supervisory, managerial, or other non-bargaining unit position from performing bargaining unit work. Isn't that exactly what happened here? And Section 2 then goes on to say that's not arbitrable. Well, Your Honor, that is a very good question. It's merely stating the fact that the CBA does not prohibit the assignment of bargaining unit work to non-bargaining unit employees in total. There are limited circumstances in Article 4 of where bargaining unit work can be assigned. And the management rights provision also says, except as clearly abridged by provisions in this agreement, which Article 4 does abridge the right that you just mentioned. How so? Can't they be harmonized? I don't think so, Your Honor, because what you had just quoted suggests an ability to assign bargaining unit work to non-bargaining unit personnel at will. Otherwise, there would be no reason to have Article 3, I'm sorry, Article 4 in the contract that limits the right to training in the event of an emergency due to scheduled or unscheduled employee absences, due to an increase in patient census or workload, things like that that are necessary for the timely provision of medical care. These are the exceptions. The statement in the management rights provision, if it did not have a statement that it was unless otherwise abridged by provisions of this contract, then we'd have a problem. But respectfully, I don't think that that in any way controls the case here. And I think that also goes to one of the problems with the Court's decision below. Looking at these provisions, it did a little bit like an arbitrator would do and said, well, overall, it touches on, maybe it's arbitrable. It represents something that's arbitrable, but the union has rights here and it can go to mediation. But the federal policy that supports the presumption of arbitrability that is, you know, again goes back to Steelworkers Trilogy and the body of federal labor law as established by the federal government. Could the displacement of bargaining unit employees, which is what Article 4 is about, ever impact staffing levels, if we understand staffing levels to just be numerical? Could you repeat that, Your Honor? Could the hospital's decision to employ some of these exceptions and displace bargaining unit employees actually impact staffing ratios? Well, it could. It could. It did in this case? In this case, to my knowledge, it has not because supervisors are performing the work. It was a swap, right? What's happened is, in effect, a mini layoff to the bargaining unit nurses where the work is going to the supervisors. And, Your Honors, I would like to reserve the rest of my time for rebuttal. You may. Thank you. May it please the Court, my name is Corey Franklin with the law firm Ford & Harrison, LLP. I represent Menorah Medical Center, the FLE in this case. For the sake of clarity, I may refer to my client as Menorah or the hospital alternatively, and the CBA as the collective bargaining agreement or vice versa. I apologize if I lapsed into one or the other inconsistently. The district court correctly held that the collective bargaining agreement excluded the dispute asserted under the union's grievance. And before getting into some of the myriad reasons under the collective bargaining agreement why this agreement can be read in whole cloth to support this proposition, it's important to understand how the staffing grid process works. Mr. Burl has indicated that this is purely a function of acuity. It is not. It is a function of both acuity and patient census. So X number of patients in a particular unit, these were med-surg units, would require a certain proportion of nurses to attend to them. And essentially what the union has asserted is that the employer can take no account of the fact that there are supervisory registered nurses who are also working on those floors and who have historically as a function of practice performed treatment roles in the course of also performing their supervisory duties. In an acute care hospital, the notion that there are a host of roles and responsibilities all attending to patient care, both inside and outside the nursing unit, is pro forma. Indeed, Article 4 of the collective bargaining agreement addresses that by way of the clause after noting that it is the intent, and we'll talk about some of the other more definitive language in Article 19 and Article 34, Article 3 as well, but it is the intent of the hospital not to displace bargaining unit nurses. There's a shortage of nurses. That's been a national problem for decades now. It is not the intent of the hospital to do that, but in the course of rendition of care and ensuring that we are efficiently utilizing resources to provide for the treatment of patients, there are a host of circumstances where not only managerial and supervisory employees, but agency nurses and individuals from other allied healthcare professions may be performing work that falls within the ambit of a nurse's duties. That's what Article 4 speaks to, the general intent to preserve nursing work for nurses, but at the same time recognizing the realities of operating an acute care hospital that requires much more of a team-based approach. That context carries in to Article 19, the Management Rights Clause. Well, I have you there. Yes. Does Article 19 in this case mirror the Article 19 in the CBA in the Western District of Missouri case? It does not. I couldn't tell from that case, but our case has the statement, Individuals exercised of its reserved management rights described in Section 1 above shall not be subject to the grievance and arbitration provisions of this agreement. Is that in the Missouri CBA? I don't recall specifically off the top of my head, and I don't want to guess my way through that. I would say between that intended effect section and the line preceding it that non-bargaining unit positions to perform bargaining unit work, combined with Sections 1A, F, K, in particular, and P, create a pretty clear statement of reserved and exclusive management rights to make such assignments notwithstanding the union's assertion of What work does Article 4 do, if you read the Article 19 Management Rights language literally? I think it is a statement of intent. It is a statement of intent to recognize and to deal with this union and to recognize that they have the overwhelming majority of the bargaining unit work is going to be performed on a day in and day out basis by NNU represented bargaining unit nurses. However, the hospital has gone to great lengths in bargaining this contract to ensure that it has the sole and exclusive managerial authority to assign non-bargaining unit personnel to perform that bargaining unit work. Is Article 4, then, redundant? Is it surplusage? No. I would not say that it is surplusage. I would say that unlike many other articles collective bargaining agreements that would have a much more clearly delineated exclusion of any other party performing bargaining unit work, this agreement is notable to the extent that that is not what this clause provides. When you look at the language of Article 4 and juxtapose that against the language using shall and nothing in this agreement shall and must in Articles 19 and Article 3 and Article 34, it is clear that this is recognizing the jurisdiction of the union as it relates to the, again, overwhelming majority of the registered nurses who are performing bedside care while at the same time calling out a longstanding managerial prerogative in using these other non-bargaining unit resources to ensure the proper rendition of care. That dovetails back into the section in Article 34 that speaks to the fact that the hospital has the sole responsibility for ensuring proper staffing consistent with its rights under Article 19, which as the court has identified are excluded from scrutiny and arbitration. Counsel, how do you respond to your adversary's contention that the district court didn't apply the presumption of arbitrability as it should have given what was on the face of the grievance? I think two things. One, as this court identified in the Avaya case, that simply what the union writes down on its grievance is not determinative of what the underlying issue is. It's clear when you look at both the remedies, particularly the remedies sought in the way that the grievance is set out, that this is a staffing dispute. At its core, while I certainly and wholeheartedly disagree with Mr. Pearl's description of this as a de facto layoff, that could not be further from the truth. But this is a function of the assignment of work and the development of staffing grids and what number of nurses will be assigned to a given unit on a given shift based on the number of patients that are admitted to the hospital at a given time. But you agree that the grievance is susceptible to an interpretation that it covers the dispute, right, that's arbitrable, no? I do not, because I believe the contract provides positive assurance that this is specifically a matter that's excluded from the purview of an arbitrator. So you disagree with the district court's construction of the grievance? I respectfully demur because I believe that the grievance clearly states a staffing dispute, notwithstanding its recitation of Article IV. I also believe that Article IV does not create a substantive right, as Mr. Pearl has articulated, in light of the fact that it speaks to the hospital's intent and then goes on to specifically delineate a whole host of circumstances, including past practice, you know, unscheduled absences, patient census, which is part and parcel to the development of a staffing grid, the number of patients that are admitted to a unit, workload, again, tied to staffing grids, or otherwise necessary. I'm still a little bit confused. If Article IV doesn't speak to a substantive right, what is it doing in the CBA? It's a statement of intent to ensure that bargaining, recognizing that bargaining units, this bargaining unit has been certified and that it is the primary source of employees for that purpose. But it has, I mean, it contemplates a process. It has exceptions. I mean, it's so... Indeed, Your Honor, there is that process, and that process is encapsulated as you read the contract as a whole, that any disputes concerning the manner in which bargaining unit nurses are assigned goes to the staffing committee, and there is a right for the union to address disputes that arise under the manner in which these non-bargaining unit employees are included in regular staffing by way of mediation through either an agreed-upon mediator or the Federal Mediation and Conciliation Service. If we find the interrelationship between Article IV, 19, and 34 to be confusing, you know, we're not quite sure how they fit together, wouldn't that be an indication that we can't say with positive assurance that arbitration should not apply here, and basically the ambiguity of the scope and substantive coverage would tilt us towards arbitration? You know, a tie goes to the union here. If the Court were to determine that the several definitive statements concerning manner in which management rights and staffing were ambiguous, then I would demur on that issue. If there are no other questions, I did want to address one aspect of Mr. Burrell's argument concerning the notion of the Eighth Circuit case. The Eighth Circuit holding, again, did not take into account the full context of Article 19, which is substantively different. The management rights language that was found in the Research Hospital Collective Bargaining Agreement, these agreements are separately negotiated by separate teams, and as would be expected in those circumstances, you're going to have substantive differences to those contracts. And as a result of that, I think, well, we certainly stand by the arguments that we raised before the Eighth Circuit Court of Appeals. I'm of the opinion that this language is significantly more clear and to the point of providing positive assurance that there was no intent by the hospital to engage in arbitration on this issue. Thank you, Counsel. Thank you. Thank you, Your Honors. I'd like to first just address the notion that Article 4, according to Mr. Franklin, is just indicative of an intent. That is absolutely not the case. The union files grievances over bargaining unit work. It just has not happened in this particular manner where the displacement of bargaining unit work occurred by way of being revealed through the enactment of a staffing plan that had not been done before. Article 4 does use discretionary language, and other parts of the agreement use mandatory language, such as shall and shall not. This is true, Your Honor, but I respectfully would state that because there are exceptions that are necessary in the hospital situation, it is making that clear and then listing the exceptions. And I think that actually the question you're raising actually goes to the merits of the dispute. That is something that Mr. Franklin could potentially argue persuasively to an extent, but it does come to the question of whether the court can say with positive assurance that the parties did not agree for this dispute to go to arbitration, for this grievance to go to arbitration. And I would just also like to, on the same subject, Mr. Franklin mentions that it's a team approach, that the supervisors, supervisory nurses, perform the work, but this is just merely saying the union has the jurisdiction. This is not the case. The practice is that the supervisory nurses do not cover their own patient loads, and that is what happened by way of this enactment of the staffing plan. They were given their own patient loads, which is something new, instead of just assisting throughout the day, which is their role. And while I believe that the language is quite clear, that it demonstrates that the parties agreed to arbitrate a dispute like this and respectfully disagreed with the district court, I would just, on the notion of following up on one of your questions, Judge Timkovich. Just as this court has acknowledged, to even acknowledge the ambiguity of arbitrability, which in the case of the dispute, the union doesn't concede here, is to resolve the issue, because doubts are to be resolved in favor of arbitrability. And that is the Tenth Circuit case. It is Sanchez v. Nitro Lift, actually an FAA case, but the same principle. Thank you, counsel. Appreciate the arguments. You are excused, and the case is submitted.